IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMANDO MALDONADO NANDI | : | CIVIL ACTION |
| | : | |
| v. | : | No. 26-7633 |
| | : | |
| JAMISON, J.L., *et al.* | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **October 21, 2026**

Petitioner Armando Maldonado Nandi brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He argues his warrantless arrest and detention violate the Immigration and Nationality Act (INA), its implementing regulations, and the Fifth Amendment's Due Process Clause. The Government asserts that Maldonado Nandi is lawfully detained pursuant to 8 U.S.C. § 1226(a) and that his petition should be denied for failure to exhaust administrative remedies. Because exhaustion is excused, and because immigration agents violated the INA and procedural due process when they arrested Maldonado Nandi without a warrant or probable cause, the Court will grant the petition and order his immediate release.

**BACKGROUND**

A citizen of Mexico, Maldonado Nandi is a 57-year-old man who has lived in the United States for more than two decades. Pet. ¶ 3, 22, Dkt. No. 1. He entered the country without inspection in 1999. *Id.* ¶ 3. Together with his partner of 22 years, he has three children, all of whom are United States citizens. *Id.* ¶ 18. Before he was detained, he supported his family by working as a dishwasher and food runner at a retirement community. *Id.*

On October 1, 2026, Immigration and Customs Enforcement (ICE) raided an auto repair shop in Norristown, Pennsylvania. *Id.* ¶ 21. The team of armed and masked agents who stormed the shop were there to serve an arrest warrant on a different individual, not the Petitioner, who was

a customer waiting for an oil change. Gov't Resp. 4, Dkt. No. 4. The Government alleges that "ICE encountered Petitioner at the shop, inquired about his immigration status, and—when they determined that he was in the United States without authorization—placed him under arrest and detained him." *Id.* Security footage produced by the shop owner tells a different chronology of events, however. Video of the raid shows that ICE agents took Maldonado Nandi into custody the moment they encountered him. Reply Ex. A, Dkt. No. 5-1. To the extent ICE agents asked him any questions, they did so only after he was put in handcuffs. *See id.* At no point did the Petitioner or anyone else attempt to flee or resist arrest. *Id.* After processing at the ICE field office, he was transported to the Federal Detention Center in Philadelphia, Pennsylvania, where he remains detained. Pet. ¶ 22, Dkt. No. 1. The Government asserts that he is detained under 8 U.S.C. § 1226(a). Gov't Resp. 2, Dkt. No. 4

Maldonado Nandi filed the instant habeas petition on October 5, 2026. Dkt. No. 1. The same day, the Court ordered the Government's response to the petition and directed the Government not to transfer him outside of the Eastern District of Pennsylvania until further court order. Dkt. No. 2. The Government responded and Maldonado Nandi filed a reply. Dkt. Nos. 4, 5. Although his original petition raises two legal defects—his warrantless arrest and the lack of an individualized custody determination—Maldonado Nandi's reply focuses more narrowly on his arrest without a warrant. *See* Reply 2, Dkt. No. 5. Accordingly, the Court limits its analysis to that issue.

**DISCUSSION**

Habeas petitioners are normally required to exhaust administrative remedies. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 1996). However, exhaustion may be excused if "administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory

or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals,* 840 F. 2d 202, 205 (3d Cir. 1988).

Maldonado Nandi is excused from appealing his detention to an immigration judge (and to the Board of Immigration Appeals, if necessary) because he challenges the defective process by which he was detained. *See Dos Reis*, No. 26-cv-3775, 2026 WL 1746649, at *3 (excusing administrative exhaustion where the petitioner "challenges the legality of the initial deprivation of liberty"). Any later bond hearing is "futile" and "inadequate to prevent irreparable injury" because the hearing provides no opportunity to contest his arrest; an immigration judge only determines whether he should be released on bond based on his risk of danger and flight. *See* 8 C.F.R. § 236.1(d)(1). Additionally, requiring exhaustion would "simply delay adjudication of a 'clear[] and unambiguous[]' violation of Petitioner's statutory and constitutional rights." *Alameda Juarez v. Mullin*, No. 26-cv-7008, 2026 WL 2981947, at *2 (E.D. Pa. Oct. 5, 2026). For these reasons, exhaustion does not preclude the Court from reaching Maldonado Nandi's claims.

The issue becomes whether his warrantless arrest was lawful. Section 236(a) of the INA provides that "[*o*]*n a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Government acknowledges—consistent with the statute, implementing regulations, and weight of authority—that the "the default rule is for the government to obtain a warrant prior to arrest." Gov't Resp. 9, Dkt. No. 4; *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that Section 1226(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest"); 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."); *Matter of Q. Li*, 29 I. & N. Dec. 66, 69, n.4

(BIA 2025) ("The regulation implementing DHS' authority to conduct arrests under section 236(a) authorizes a prospective arrest and contemplates that the subject of the warrant has not yet been arrested and taken into custody at the time the warrant is issued."); *Tabora-Brizuela v. Mullin*, No. 26-cv-7010, 2026 WL 2908095, at *2 (E.D. Pa. Sept. 28, 2026) (collecting cases).

Even though Maldonado Nandi was arrested without the requisite warrant, the Government points to Section 287(a)(2) of the INA as providing an exception to that default rule. Under Section 287(a)(2), immigration agents may conduct a warrantless arrest if they have (1) "reason to believe that the alien so arrested is in the United States in violation of [immigration laws]" and (2) "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). The Third Circuit has interpreted "reason to believe" as "coterminous with the fourth amendment's requirement of probable cause." *Lee v. Immigration and Naturalization Service*, 590 F.2d 497, 459–500 (3d Cir. 1979). The requirements of probable cause are well settled: "probable cause must be particularized with respect to the person to be . . . seized," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal citation and quotation marks omitted), and depends on "facts to known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Precedent and commonsense dictate that information gathered *after* an arrest cannot be used to justify the probable cause necessary *before* arrest, "as an officer cannot form a belief about probable cause based on information they do not know." *Tabora-Brizuela*, 2026 WL 2908095, at *2.

The Government contends ICE agents had "reason to believe" Maldonado Nandi was in violation of immigration laws because "when questioned about his immigration status, Petitioner admitted to being a citizen and national of Mexico with no authorization to be present in the United States." Gov't Resp. 10, Dkt. No. 4. And simply based on that fact, they had "reason to believe"

that he was "likely to escape before a warrant c[ould] be obtained." *Id.* Conveniently, however, the Government glosses over the fact that questioning about his immigration status took place only *after* ICE arrested him. In the moment, ICE agents knew nothing about Maldonado Nandi; the only facts that could have been known to the arresting officer were that he was a Latino-looking man who happened to be present at this auto shop. That is plainly insufficient to create a "particularized" basis for suspecting him of being in the United States illegally. Moreover, nothing in the record indicates ICE agents had "reason to believe" that Maldonado Nandi was likely to escape before ICE could follow what is supposed to be its usual practice of first obtaining a warrant. The Form I-213 documents that he was arrested "without incident," and video of the raid confirms that when ICE agents descended on the shop, Maldonado Nandi surrendered immediately. Nevertheless, the Government contends that he was likely to escape simply by virtue of his unlawful status (which, again, ICE agents only learned *after* his arrest). Gov't Resp. 9–10, Dkt. No. 4. But "[s]uch a reading would render the limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 1357(a) meaningless." *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1007 (N.D. Ill. 2016); *Escobar Molina v. U.S. Department of Homeland Security*, 811 F. Supp. 3d 1, 32 (D.D.C. 2025) (citing *United States v. Harrison*, 168 F.3d 483, 1999 WL 26921, at *4 (4th Cir. 1999) (per curiam) (unpublished table decision) (rejecting the Government's interpretation that *any* individual who is in the United States unlawfully is "likely to flee" before ICE can obtain an arrest warrant)). Thus, altogether, Maldonado Nandi's arrest and continued detention violate the INA.

In addition to his statutory claim, Maldonado Nandi also challenges his arrest and detention as a violation of procedural due process. To assess a procedural due process claim, courts consider the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) "the private interest that will

be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Buele Morocho v. Warden Philadelphia FDC*, 189 F.4th 287, 306 (3d Cir. 2026) (quoting *Mathews*, 424 U.S. at 335). Here, the *Mathews* factors weigh in Maldonado Nandi's favor. First, Petitioner has a "constitutionally protected interest in avoiding physical restraint." *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). Indeed, his "interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Second, the "risk of erroneous deprivation" is at its apex when ICE fails to operate within the scope of its own authority under § 1226(a) and § 1357(a)(2). *See Alameda Juarez*, 2026 WL 2981947, at *4 ("There is a significant 'risk of an erroneous deprivation' when ICE acts to detain an individual under Section 1226(a) without first determining whether there is a legitimate reason for doing so or sufficient time to secure a warrant, and without complying with applicable statutory and administrative regulations."). Third, the Government has a legitimate interest in enforcing the Nation's immigration laws, but only to the extent that it does so within the boundaries of its authority. *Id.* ("Respondents and ICE also have an interest in and obligation to abide by the rule of law and follow applicable statutory provisions and regulations when carrying out their duties."); *Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988) (observing that "principles of due process require an agency to follow its own regulations, which have the force of law"). Balancing all the factors, the Court finds Maldonado Nandi's arrest without a warrant or probable cause violates his due process rights.

"Post-hoc warrant practice is by any measure 'constitutionally problematic.'" *Tabora-Brizuela*, 2026 WL 2908095, at *5 (citation omitted). As Judge McHugh articulated eloquently there, "[a]llowing the Government to launder an unlawful arrest through a post-hoc warrant would greenlight authorities to make baseless arrests and conjure a reason to hold them later." *Id.* This Court agrees: neither the INA nor our constitutional framework condone that lawless result.

**CONCLUSION**

Maldonando Nandi's arrest and continued detention violate the INA and due process. So the Court will grant his petition and order his immediate release. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.